IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MITCHELL K., | ) | |
| | ) | No. 23 C 4285 |
| **Plaintiff,** | ) | |
| | ) | **Magistrate Judge M. David Weisman** |
| v. | ) | |
| | ) | |
| MARTIN O'MALLEY, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Mitchell K. appeals the Commissioner's decision denying his application for Social Security benefits. For the reasons set forth below, the Court affirms the Commissioner's decision.

### Background

On, September 24, 2017, plaintiff applied for benefits, alleging a disability onset date of August 12, 2016. (R. 71.) His application was denied initially, on reconsideration, and after a hearing. (R. 15-30, 71-134.) The Appeals Council denied review (R. 1-4), leaving the ALJ's decision as the final decision of the Commissioner reviewable by this Court pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

### Discussion

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "[s]ubstantial evidence," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part, sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920. The Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which he claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity ("RFC") to perform his past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *see Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

However, "[a]n individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). Thus, when an ALJ determines that a claimant is disabled and there is medical evidence of drug addiction or alcoholism, the ALJ "must determine whether [the] drug addiction or alcoholism is a contributing factor material to the determination of disability"; that is, whether the claimant would still be disabled if she stopped using drugs or alcohol. 20 C.F.R. § 404.1535(a). To do so, the ALJ will determine whether the limitations on which the disability determination is based would remain if the claimant stopped using drugs or alcohol and any of the remaining limitations would be disabling. 20 C.F.R. § 404.1535(b). If the remaining limitations would not be disabling, the drug addiction or alcoholism is a contributing factor material to the determination of disability. *Id.* If the remaining limitations are disabling,

the drug addiction or alcoholism is not a contributing factor material to the determination of disability. *Id.*

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. (R. 18.) At step two, the ALJ found that plaintiff has the severe impairments of a substance abuse disorder, obesity, anxiety, depression, osteomyelitis, and cardiomyopathy. (*Id.*) At step three, the ALJ found that, including his substance abuse disorder, plaintiff's impairments meet Listing 12.06 but if plaintiff stopped his substance abuse, he would not have an impairment or combination of impairments that meets or equals a listed impairment. (R. 18-21.) At step four, the ALJ found that plaintiff could not perform any past relevant work but absent substance abuse had the RFC to perform work at all exertional levels with certain exceptions. (R. 24-29.) At step five, the ALJ found that, absent substance abuse, jobs exist in significant numbers in the national economy that plaintiff can perform, and thus he is not disabled. (R. 29-30.)

The state agency medical experts, Drs. Aquino and Jones, said that plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, and sit for six hours of an eight-hour workday. (R. 79-80, 111.) Drs. Aquino and Jones also said that plaintiff could stand or walk six and four hours, respectively, in an eight-hour workday, and that his physical impairments limited him to less than a full range of light work. (R. 80, 111.) The ALJ said this about the doctors' opinions:

> [T]he state agency medical consultants did not account for the well documented impact of the claimant's alcohol abuse on his cardiac functioning in their narrative explanations of their opinions or the basis for the postural limitations in their assessments. In addition, considering all of the claimant's impairments, their opinions are inconsistent with the medical evidence. The medical evidence indicates that while the claimant was abusing alcohol, he was treated for atrial fibrillation that was triggered by his alcohol abuse and noncompliance with his medication. However, the exams also showed the claimant had no motor strength

deficits, range of motion deficits or any other neurological abnormalities when he was abusing alcohol. Therefore, I find the state agency medical consultants' opinions are not persuasive when considering all of the claimant's impairments, including his alcohol abuse.

(R. 21) (citations omitted). Plaintiff contends that the ALJ was mistaken when he said the experts did not account for the impact of alcohol abuse on his cardiac functioning, and absent that mistake, the ALJ may have adopted the experts' opinions that plaintiff was limited to less than a full range of light work.

As plaintiff points out, the record shows that the experts did consider the impact of alcohol abuse on plaintiff's functioning in formulating their opinions. (*See* R. 79-80, 110-12.) But the experts did not say what plaintiff's abilities would be absent alcohol abuse. (*See id.*) That is a pivotal inquiry in this case because plaintiff cannot be deemed disabled and thus entitled to benefits if his alcohol abuse is a "contributing factor material to the Commissioner's determination that [he] is disabled." 42 U.S.C. § 423(d)(2)(C), 1382c(a)(3)(J). *See, e.g., Kangail v. Barnhart*, 454 F.3d 627, 628 (7th Cir. 2006) ("When an applicant for disability benefits both has a potentially disabling illness and is a substance abuser, the issue for the administrative law judge is whether, were the applicant not a substance abuser, she would still be disabled."). Because the experts left that crucial question unanswered, the ALJ's mistake is not the basis for a remand.

Alternatively, plaintiff argues that the ALJ erred by relying on his own interpretation of medical evidence that was generated after 2018. The ALJ said:

> [A]fter the claimant stopped abusing alcohol in late 2019 and a pacemaker could be implanted to address his cardiac condition, there is no indication that he had any additional hospitalizations for palpitations in 2020 through mid-2022. . . . [T]he exams after 2019 showed the claimant had no pulmonary abnormalities, motor strength deficits, range of motion deficits or any other neurological abnormalities.

(R. 27) (citations omitted). "[A]n ALJ is not prohibited from evaluating . . . medical records so long as she doesn't interpret evidence that requires expertise to understand." *Marshall v. Kijakazi*,

No. 21-CV-98-JDP, 2022 WL 2914492, at *4 (W.D. Wis. July 25, 2022) (citing *Prill v. Kijakazi*, 23 F.4th 738, 750 (7th Cir. 2022); *Deborah M. v. Saul*, 994 F.3d 785, 790 (7th Cir. 2021).) It does not require expertise to determine whether plaintiff's records show that he was hospitalized for heart palpitations after 2019. Similalrly, the ALJ said plaintiff's post-2019 exams showed no pulmonary abnormalities, motor strength deficits, range of motion deficits, or other neurological abnormalities because the records he cited state exactly that. (*See* R. 27 (citing R. 2774 (Cook County Health record stating that plaintiff's heart rate and rhythm were normal and he had no neurological deficit); R. 3489 (South Shore Hospital record stating that plaintiff's heart rate and rhythm were normal, he had normal range of motion in his extremities, and normal neurological functioning); R. 3715 (Ingalls Memorial Hospital record noting normal cardiovascular and neurologic functioning).) Because the ALJ did not impermissibly interpret the medical evidence, plaintiff's argument to the contrary fails.

Plaintiff also contends that the evidence cited by the ALJ to support omitting a walking limitation from the RFC, *i.e.*, that plaintiff could walk around in his assisted living facility, is insufficient. But along with that evidence, which was generated after plaintiff stopped abusing alcohol, the ALJ cited evidence that plaintiff had normal motor strength and could walk, ride a bicycle, and move around without difficulty when he was abusing alcohol. (*See* R. 27 (citing, *e.g.*, R. 555 (2015 treatment note stating that an exercise assessment was performed and plaintiff walked and rode a bike); R. 587 (2015 psychological evaluation stating that "[m]otor examination reveals normal strength in all four quadrants"); R. 1113-15 (2018 consultative evaluation noting that plaintiff walked in without an assistive device, was able to walk around the office without difficulty, his gait was normal, and he had full range of motion in all extremities).). The ALJ's reliance on plaintiff's functional abilities while abusing alcohol to support an RFC intended to

5

capture a claimant's presumptively improved abilities while not abusing alcohol is facially reasonable. This is sufficient evidence to support the RFC. *See Biestek*, 139 S. Ct. at 1154 (stating that substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consol. Edison Co. of NY v. NLRB*, 305 U.S. 197, 229 (1938)).

Plaintiff also raises several challenges to the symptom evaluation. He contends, for example, that the ALJ should not have relied upon "minor inconsistencies" in the evidence or the fact that he could communicate his needs to nursing home staff in assessing his symptoms. These arguments, however, invite the Court to reweigh the evidence, which we cannot do. *See Gedatus*, 994 F.3d at 900.

Plaintiff also argues that the ALJ improperly limited the symptom assessment to consideration of plaintiff's medical records. But the decision shows that the ALJ considered not only plaintiff's medical records but his testimony and written statements, his activities of daily living, and the statement of his ex-wife. (*See* R. 24-28.)

Plaintiff further contends that the symptom evaluation is faulty because it is based on the ALJ's mistaken belief that plaintiff's mental status exams were normal after he stopped abusing alcohol. On the contrary, plaintiff says, the record shows that his abnormal mental status exams persisted. However, the evidence plaintiff cites for that proposition are records from his April 2021 hospitalization for suicidal ideation (*see* ECF 20 (citing R. 3480, 3488, 3516, 3519, 3520, 3525, 3526)), which the ALJ expressly considered in his analysis. (*See* R. 26-28.)

Finally, plaintiff argues that, had the ALJ considered plaintiff's history of high-paying work, the ALJ would have found the job history supportive of plaintiff's statement that his pain "debilitated him to the point he was unable to persist at his past well-paying job." (ECF 20 at 14.)

But the ALJ credited plaintiff's statements about pain, albeit without explicit reference to plaintiff's work history, and found that, even absent alcohol abuse, plaintiff's impairments precluded him from performing his past relevant work. (*See* R. 29.)

In short, none of plaintiff's challenges to the ALJ's symptom evaluation has merit. Thus, the symptom evaluation is not a basis to remand.

## Conclusion

For the reasons set forth above, the Court grants the Commissioner's motion for summary judgment [23], affirms the Commissioner's decision, and terminates this case.

**SO ORDERED.**                    **ENTERED:  April 30, 2024**


**M. David Weisman**
**United States Magistrate Judge**